

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Dear Sir:

Attention: Frank D. Wear,
Securities Commissioner

Opinion No. O-3897
Re: Does the "Cooperative Advance-
ment Incorporated" have authority
to issue membership and invest
its funds in the manner set out
in its Constitution, and related
questions?

Your letter of August 21, 1941, requesting an opin-
ion of this department upon the questions stated herein has
been received.

We quote from your letter as follows:

"On June 30, 1941 the Cooperative Advance-
ment Incorporated filed a charter with the office
of the Secretary of State which contained the
following purpose clause:

"'The purpose for which said corporation is
formed is to organize laborers, workingmen, wage
earners, and farmers, and business people to
protect and advance themselves in their various
pursuits.'

"You will note that the capital stock of
this corporation consists of $500.00 divided
into 100 shares of $5.00 each.

"I am enclosing for your examination and con-
sideration of the questions hereinafter asked a
copy of the charter of such corporation.

Honorable Wm. J. Lawson, Page 2

"The corporation has adopted a constitution and a plan for selling memberships as distinct from the capital stock, the cost of such memberships being $12.00 per year. Of the $12.00 collected, $6.00 shall be deposited in a trust fund for the purpose of purchasing common stock in different industries. The remaining $6.00 of the first year's dues are to be used for expenses, promotions and maintenance of the organization.

"The second year $2.00 of the $12.00 due shall be used for expenses and the other $10.00 deposited in such fund.

"$1.00 of the third year shall be used for expenses and $11.00 shall be deposited in such fund.

"Attached hereto is a copy of a proposed prospectus and constitution which the corporation plans to issue. The corporation has applied to this Department for a ruling as to whether or not such memberships constitute a security within the provisions of the Texas Securities Act and before advising them as to the position of this Department with respect thereto we would appreciate having the benefit of your opinion as to the following questions:

"1.) Is such corporation authorized to issue memberships on the plan suggested?

"2.) Are such memberships securities within the meaning of the Texas Securities Act?

"3.) May such corporation legally invest its funds in the manner set out in such plan?"

Under the Constitution of the above mentioned corporation, the funds of said corporation are to be invested as set out in your letter and the membership fees are also to be used as mentioned therein. For the third year of the same membership, $11.00 shall be placed in the reserve account, and $1.00 in the operating account, as stated by you,

Honorable Wm. J. Lawson, Page 3

and in the same ratio as the third year thereafter.

Article 1302, Vernon's Annotated Civil Statutes, sets forth the purposes for which private corporations may be formed, and Section 83 thereof, as amended by House Bill No. 16, Acts of the 47th Legislature, 1941, reads as follows:

"To organize laborers, working men, wage earners, and farmers to protect themselves in their various pursuits; provided, however, no charter shall be issued hereafter to laborers, working man, or wage earners, or amendment granted to a charter of a corporation previously created to organize laborers, working men, or wage earners, or that may be hereafter created hereunder to organize laborers, working men, or wage earners, by the Secretary of State to any person, association or corporation, for such purposes without an investigation first having been made by the Commissioner of Labor Statistics concerning such application, and a favorable recommendation made thereon by said Commissioner to the Secretary of State. It is expressly provided that no investigation or recommendation by the Commissioner of Labor Statistics shall be required or made of applications from farmers for a charter."

In considering your first question as stated above, we are first concerned with the proposition whether or not the above mentioned corporation has the power under its charter and the laws of this State to issue memberships on the plan heretofore mentioned. Generally speaking, the powers of the corporation are those expressly conferred upon it by its charter or the statutes and those implied from the express powers or incidental to the existence of the corporation. The corporation has no power to do an act where it is not within the express, implied or incidental powers resulting from the charter, or where it is prohibited by the charter or some special statute, or where it is prohibited by a general statute applicable to both natural and artificial persons. Therefore, in determining whether a corporation has the power to do an act, it is necessary

Honorable Wm. J. Lawson, Page 4

first to refer to the charter to see whether the power is conferred expressly or by implication, then to examine the charter and the statutes relating to corporations to see if the act is prohibited, and then in some cases to consult the general statutes to see if the act is illegal even in case of natural persons.

It will be noted that the language contained in the purpose clause set forth in the charter of the above mentioned corporation is substantially the same as the language in the first clause of Section 63 of Article 1302, supra. It was stated in the case of Smith v. Wortham, 157 S. W. 740:

"The statutory requirement that the purpose of the corporation shall be stated in the charter was intended for the protection of the incorporators and stockholders, and the public, in order that they may be advised as to the character of its corporate activities, and to enable the State, through its proper officers, to collect filing fees and franchise taxes, and to supervise and control the use and punish the non-use of its franchise."

It is stated in Texas Jurisprudence, Vol. 10, p. 624:

"In connection with the statement of the purposes of the corporation, the principal proposition is that the scope of the purposes enumerated in the statutes must not be exceeded. . . , it is considered to be the policy of the Texas law to limit the right of incorporation to the specific purposes authorized by statute. General rules of statutory construction are followed in determining the scope of the various purposes enumerated in the statute."

No doctrine of the law of corporations transcends in importance that which announces that the kinds of transactions in which the corporation may engage are legally limited; nor is any policy more firmly established by the Constitution, statutes and judicial decisions of the State. The concept that a corporation was invested with only limited legal powers is not a doctrine of the common law. (Moser v.

Honorable Wm. J. Lawson, Page 5

Greenland Hills Realty Co., 300 S. W. 177; Texas Jurisprudence, Vol. 10, p. 852.)

With reference to the construction of charter powers it is stated in Texas Jurisprudence, Vol. 10, p. 878:

"The principal rule that has been formulated for the interpretation of charter powers is that only such powers are given as are clearly embraced in the words of the act or charter or derived therefrom by necessary implication in view of the object of the grant. Another cardinal rule applying particularly to charters under which special privileges are claimed is that any ambiguity or doubt must be resolved in favor of the public as against the grantees of the charter."

With reference to incidental powers, it is stated in Texas Jurisprudence, Vol. 10, p. 878:

"In every grant of corporate powers, there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred. This statement of the principle assumes that the power exercised is incidental to an expressed power; transactions differing in kind from those which the corporation is empowered to enter into cannot be regarded as incidental.

"A determining factor in deciding whether the asserted power is possessed by the corporation as incidental to its expressed purposes is whether the transaction is usual in the operation of a business of that kind, great weight being given to the dominant purpose of the corporation. In the language of a leading authority,

"'If the means be such as are usually resorted to and a direct method of accomplishing the purpose of the incorporation, they are within its powers; if they be unusual and tend in an indirect manner only to promote its interests, they are held to be ultra vires.'"

Honorable Wm. J. Lawson, Page 6

It is well established that a corporation may limit or restrict the scope of its powers and authority conferred by the statutes as a general law, by appropriate provisions in the articles of incorporation. It is equally true that the powers of the corporation cannot be enlarged by its by-laws. (Fletcher Cyclopedia Corporations, Vol. 2, p. 1764.)

It is further stated in the above mentioned Vol. 2, Fletcher Cyclopedia Corporations on p. 1768:

"A power is implied when 'reasonably necessary' to enable the corporation to accomplish the objects of its creation."

It is further stated by Fletcher in the above mentioned volume on p. 1770:

"A power which the law will regard as existing by implication must be one in a sense necessary, - that is, needful, suitable, and proper to accomplish the object of the grant, - and one that is directly and immediately appropriate to the execution of the specific powers, and not one that has but a slight, indirect, or remote relation to the specific purposes of the corporation.

"In Texas the rule is stated as follows: 'In short, if the means be such as are usually resorted to, and a direct method of accomplishing the purpose of the incorporation, they are within its powers. If they be unusual, and tend in an indirect manner only to promote its interests, they are held to be ultra vires.'

"A leading textbook writer lays down the rule as follows: 'Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this; it may not, under the pretense of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have, however, determined that such means shall be direct, not indirect, . . . "

Honorable Wm. J. Lawson, Page 7

With reference to the above mentioned rules and others set out by Fletcher in his work on corporations, it is stated on p. 1778, Vol. 2:

"The rules laid down above as to implied powers are well settled and are, at the present day, not even questioned by courts or writers. The difficulty comes in applying the rules. It is easy to say that a power is implied if it is 'reasonably necessary' to the exercise of express powers, but there is no test to decide whether a particular act, done by a particular corporation, under particular circumstances, is 'reasonably necessary.' Of course, many acts are clearly on one side of the line or the other. But there are many close to the dividing line, which occasions more or less confusion in the decisions. The result is the rule that whether an act comes within the implied powers of a corporation 'must be determined in each case from all its facts and circumstances.'"

It is clear that the purpose clause as stated in the charter of the above mentioned corporation and the statute under which it was incorporated does not expressly confer upon the corporation the power to issue memberships as above mentioned. We do not think that the issuing of the memberships heretofore mentioned is a direct method of accomplishing the purpose of the incorporation of said company or are means such as are usually resorted to, but that such methods and means are unusual and tend in an indirect manner only to promote the interests of the corporation. Therefore, it is our opinion that the Cooperative Advancement Incorporated has no legal authority to issue the above mentioned memberships on the plan hereinabove stated.

As we have answered your first question in the negative, your second and third questions require no discussion.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED SEP 19, 1941

Gerald Sullen

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams

APPROVED OPINION COMMITTEE BY BWB CHAIRMAN